UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CASE NO. 5:13CR560 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John R. Adams |
| | ) | |
| ILEANA OSBORNE, et al., | ) | ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court are motions for acquittal and motions for new trials filed by Defendants Kyle Conrad, Linda Conrad, John Dubay, Jon Jacobson, David Romsey, and Grace Wollerman. The Government has responded in opposition to each motion. The Court now resolves those motions.

In considering a motion for judgment of acquittal under Criminal Rule 29, this Court must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the elements of the crime beyond a reasonable doubt. *United States v. Abner*, 35 F.3d 251, 253 (6th Cir.1994); *United States v. Meyer*, 359 F.3d 820, 826 (6th Cir.1979). In doing so, the Court does not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *Id*.

The Sixth Circuit has explained that a defendant claiming insufficiency of the evidence "bears a very heavy burden." *Abner*, 35 F.3d at 253. On review, all evidence must be construed in a manner most favorable to the Government. Moreover, circumstantial evidence alone is sufficient to sustain a conviction. *Id*.

Under Federal Rule of Criminal Procedure 33, the court may "vacate any judgment and

grant a new trial if the interest of justice so requires." Fed. R.Crim. Pro. 33(a). "The decision to grant or deny a new trial rests within the district court's sound discretion." *United States v. Seago*, 930 F.2d 482, 488 (6th Cir.1991). "[T]he defendant bears the burden of proof that a new trial is warranted and 'such motions should be granted sparingly and with caution.'" *United States v. Dolan*, 134 F.3d 372 at *3 (6th Cir.1997).  A motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence. Generally, such motions are granted only "in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *United States v. Turner*, 490 F.Supp. 583, 593 (E.D.Mich.1979), aff'd, 633 F.2d 219 (6th Cir.1980). A district judge, in considering the weight of the evidence for purposes of adjudicating a motion for new trial, may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir.1998).

> A Motion for Acquittal and a Motion for New Trial based on the ground that the verdict is against the great weight of the evidence are governed by very different standards. The Motion for New Trial involves a much broader standard of review than a Motion for Acquittal. A verdict may well be against the great weight of the evidence, but, nevertheless, be substantial enough to permit reasonable jurors to draw an inference of guilt. In a Motion for New Trial, the trial judge can consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice. It has often been said that he/she sits as a thirteenth juror.
>
> Nevertheless, granting a Fed.R.Crim.P. 33 Motion for New Trial attacking the weight of the evidence is a discretionary matter. The Court should exercise such discretion only in the extraordinary circumstance where the evidence preponderates heavily against the verdict."

*United States v. Turner*, 490 F.Supp. at 593.

Defendants were charged with one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 and various counts of bank fraud in violation of 18 U.S.C. § 1343.   18 U.S.C.

§ 1349 provides: "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 18 U.S.C. § 1344 provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Defendants challenge various aspects of the sufficiency of the evidence with respect to each of their convictions. The Court now reviews those arguments.

The primary argument raised by Defendants revolves around their contention that the Government failed to prove any intent to defraud the banks at issue herein. To that extent, the arguments raised by Defendants and the evidence submitted by the Government are remarkably similar to the facts and issues raised in *United States v. Derosa*, 544 Fed. Appx. 830 (11th Cir. 2013).

> At trial Derosa's main defense was that he did not have sufficient knowledge of the fraudulent aspects of the mortgage transactions to support his conviction. The evidence showed that other people falsified the preliminary loan documents, including by inflating Derosa's salary and savings, omitting information about other real estate transactions, and signing Derosa's name without his permission or knowledge. On the other hand, the government presented evidence that Derosa personally attended the closings and signed the closing documents, which included the false information the mortgage brokers submitted in the preliminary documents. Derosa's main defense was that he did not know, or notice, that what he was signing was fraudulent.

*Id.* at 833.

All of the Defendants herein raise similar arguments. Defendant Jacobson, for example,

contends that he supplied complete, truthful, and accurate information to Ileana Osborne when he sought to obtain loans. Jacobson further alleged that he was "rushed" through the closing process and therefore did not notice that his truthful information had been altered by Osborne. Furthermore, Osborne did not offer testimony that she had informed Jacobson of her fraudulent changes to his income and assets. Jacobson continues, that if he had an intent to defraud that "it flies in the face of logic that he would have submitted a truthful application to Ms. Osborne in the first place." Doc. 287 at 18.

In a vacuum, Defendants arguments regarding intent may appear compelling. Jacobson appears to have relied upon an industry professional, Ileana Osborne, and to have been victimized by a smooth-talking fraudster, Jack Coppenger. However, neither this Court nor Defendants have the luxury of examining those arguments in such a vacuum. Rather, the Court must examine the totality of the evidence presented. With respect to Jacobson, the additional evidence submitted demonstrated as follows.

· Jacobson did not disclose in his loan application that Coppenger would be making payments on his behalf.

· Jacobson provided a blank, signed loan application to Osborne.

· Diana Sims prepared a "silent-second mortgage" in favor of Jack Coppenger on the WatersEdge property purchased by Jacobson, and the amount of that mortgage was almost precisely the same amount of money that Jacobson was to provide at the closing of the property.

· Jacobson's loan (in the principal amount of $408,000) purported to obligate him to make payments of nearly $10,000 per month while his yearly income was only $67,000.

· Jacobson received two payments, one following each closing, in the amounts of $25,000 and $7,500, while never paying any amount toward the loan obligations.

In analyzing a similar argument to the one raised herein, the 11th Circuit in *Derosa* noted as follows:

> Derosa participated personally in five of the fraudulent loan transactions. He was present at the closings and signed documents containing false job titles and employment information, inflated income and bank account figures, and misrepresentations about whether he intended to live in the properties as his primary residence. The loan documents also omitted information about other properties for which he was getting loans and buying at the same time.
>
> Although some of the closings might have been "point and sign" closings with no explanation, one of the closing agents, Susan Greenburg–Lieberman, testified that she does not perform point and sign closings. She testified as to her general practice of explaining the various documents to the borrower. A reasonable jury could have concluded that Derosa was put on notice by the more detailed closing with Greenberg–Lieberman, both for it and for the three later transactions in which he participated, and therefore rejected his defense that he did not know the closing documents contained fraudulent information.
>
> There was also sufficient evidence to allow a reasonable jury to conclude that Derosa acted with an intent to defraud. Derosa never contributed any money to the transactions, despite representations on the mortgage documents that funds were coming from him, the borrower. Instead he received funds from Guaracino directly or from an entity controlled by Guaracino. In another instance Derosa wrote a check to the IRS in his name and then received a check in an equal amount from Guaracino. There was also evidence suggesting he lied about the source of the borrower's funds for at least one transaction when he was asked about it by Postal Inspector Bender. This would also permit a jury to infer that he knew it was improper that the funds were not coming from him. Despite not contributing any money himself, there is evidence that Derosa received money in exchange for his participation in the transactions. Derosa also quit-claimed at least two of the properties to Guaracino soon after the purchases, allowing for an inference that his participation was only necessary to receive the financing and that he did not intend to own the properties as an investment.

*Derosa*, 544 Fed. Appx. at 834-35.

Similar to the defendant in *Derosa*, Jacobson did not contribute any money at closing, yet received payments immediately following the closing. Also similar to the defendant in *Derosa*, Jacobson signed documents that contained false information and relied upon an undisclosed third party to make payments on his loan obligation. The Court acknowledges that Jacobson claims

that Coppenger rushed him through the closing process and that he did not carefully review documents before signing them.   However, there is no dispute that Jacobson obligated himself to a loan that he knew with certainty he could not afford to make payments on as required. This evidence, coupled with Jacobson's knowledge that he would receive payments following the closings, provided an ample basis for a jury to conclude that Jacobson had knowledge that the information contained in his loan application was not truthful.

A similar analysis can be applied to each of the other named defendants in this matter.   All engaged in conduct that is materially indistinguishable from Jacobson's conduct.   Each defendant sent a blank, signed loan application to Osborne.  Each was involved in a transaction wherein a HUD-1 form was prepared that improperly reflected the cash from the buyer and the cash to the seller.   In all instances, any money paid was paid by Coppenger and in some instances no money changed hands at all.   Sims prepared silent second mortgages for Romsey and Kyle Conrad, just as was done for Jacobson.   Each defendant received a varying amount of cash shortly after closing from Coppenger.   Further, several of the other defendants, like Jacobson, received loans so far in excess of their income and assets, there was never an ability for that particular defendant to make loan payments on his/her own.   Moreover, Coppenger's office assistant, Jackie Delker, indicated that she fielded requests from every defendant seeking to ensure that Coppenger was making the mortgage payments on their behalf.   Accordingly, the Court finds that there was more than sufficient evidence for a jury to conclude that each defendant had the intent to defraud the banks.

Similarly, given 1) the financial transactions between Coppenger and the defendants that occurred immediately following the closings, and 2) the directives from defendants to Delker to ensure Coppenger made the mortgage payments, the jury similarly had sufficient evidence to find that the defendants had engaged in a conspiracy to commit bank fraud.

To be clear, the Court does not reach this result lightly.  Defendants certainly present in a sympathetic light.  Following the real estate collapse, Coppenger was unable to develop the properties at issue and therefore the mortgages at issue went into default, and lengthy and costly civil litigation followed.   It would be easy to isolate a narrow set of facts and find these defendants to be victims of a fraud perpetrated by Coppenger.  Again, however, to do so, one would have to examine only a narrow set of facts and ignore the broader picture painted by the evidence.  To conclude that defendants were simply investors, duped by both Osborne and Coppenger, one would have to ignore the multitude of red flags discussed above.  Defendants were asked for and provided signed, blank loan applications.  Defendants signed numerous documents with false information, sometimes signing a name within inches of a number indicating a massive down payment from cash.  Defendants obtained loans in amounts far, far in excess of what a reasonable person would expect from their actual income and assets.  Defendants readily reached out to have Coppenger make payments on their behalf.  Defendants received payments immediately following the loan closing, despite providing no money of their own.  As such, the Court cannot conclude that there was a lack of intent, nor can the Court conclude that the defendants are more properly classified as victims.

To the extent that there are other minor arguments raised by defendants, the Court finds no merit in those arguments.  Having found that the evidence amply supported a finding of intent to defraud, arguments related to "active fraud" and such carry no weight.  Moreover, the Government's brief amply demonstrates the fault in those arguments and the Court finds no need to elaborate on its denial.

Finally, the Court's discussion above is meant to subsume both the motions for acquittal and the motions for new trial.  In its review above, the Court utilized the more generous Rule 33

standard, rather than viewing the evidence in a light most favorable to the Government as it would under Rule 29.   In so reviewing, the Court finds that the interests of justice do not require that the jury verdict be set aside and a new trial ordered.

Moreover, to the extent that Jacobson contends that the Government engaged in some form of misconduct in relation to Jack Coppenger, the Court finds no merit in that contention. Coppenger was represented by counsel during these proceedings and advised by the Government that if he testified inconsistent with his prior statements and agreements with the Government, he could be prosecuted for perjury.   Thereafter, Coppenger chose to invoke Fifth Amendment right rather than testify.  The Court presided over that colloquy and upon review finds nothing improper with the warnings given by the Government.   As such, the conduct at issue does not warrant a new trial.

The motions for acquittal and their accompanying motions for new trials are hereby DENIED.

IT IS SO ORDERED.

|  |  |
|---|---|
| May 12, 2015 | /s/ John R. Adams |
| Date | Judge John R. Adams |
|  | United States District Court |